## Case No. 2,977.

### COLE et al. v. BATLEY.

[2 Curt. 562.] [1]

Circuit Court, D. Rhode Island. Oct. Term, 1855.

#### DESCENT.

1. Under the statute of descents of Rhode Island, the maternal grandfather of the intestate takes an estate which descended to the intestate from her mother, to the exclusion of uncles and aunts of the intestate who were brothers and sisters of her mother.

2. The canon of descents of ancestral estates is the same as of other estates, save that the descent is limited to those of the blood of the person from whom the estate came to the intestate, if any such there be.

3. A father is of the blood of his daughter, within the meaning of that act.

This was a bill in equity [by Samuel J. Cole and wife and others] for a partition. The only question made, was concerning the title of one of the respondents to an undivided eighth part of the land. The parties agreed on a statement of facts, which showed, in substance, that Rebecca Reed being seized of the one eighth in question, died intestate and unmarried, in 1842, leaving a maternal grandfather, Thomas Sessions, and two uncles and three aunts, brothers and sisters of her mother. Rebecca Reed derived the estate in question by descent from her mother, who also derived it by descent from her mother, the wife of the above-named Thomas Sessions, Rebecca's grandfather. The question was, whether, under the statute of descents of Rhode Island, Thomas Sessions, the grandfather, took, to the exclusion of the uncles and aunts; [John T.] Batley, who claimed this undivided eighth under a conveyance from Thomas Sessions, being a party respondent in the bill.

Bradley & Ames, for Batley.
Mr. Cozzens, contra.

CURTIS, Circuit Justice. The statute of descents of Rhode Island (Rev. Laws, 239) contains the following clause: "When the title to any real estate of inheritance, as to which the person having such title shall die intestate, came by descent, gift, or devise from the parent, or other kindred of the intestate, and such intestate die without children, such estate shall go to the kin next to

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

the intestate, of the blood of the person from whom such estate came or descended, if any there be." Two questions are made in this case. The first is, whether Thomas Sessions, the grandfather of the intestate, is "of the blood of the person from whom such estate came or descended," within the meaning of those words in the act. In Gardner v. Collins, 2 Pet. [27 U. S.] 58, the supreme court, construing this statute, held that the descent, gift, or devise there spoken of, means immediate descent, gift, or devise, and makes the immediate ancestor the sole stock of descent. So that though this estate in fact descended to Rebecca Reed from her maternal grandmother, yet, as it came to Rebecca through her mother, the latter, being the immediate ancestor, is "the person from whom such estate came," within the meaning of the act. And the inquiry is, whether Thomas Sessions, is "of the blood" of his daughter, Rebecca's mother? It was held in Gardner v. Collins [supra], that the expression, of the blood of another, in this statute, includes all who have any of the blood of that other. And it is well settled, that two persons are of the same blood, in part or in whole, who are descended from the same pair. If wholly descended from the same pair, as brothers and sisters having the same father and mother, they are wholly of the same blood; if they have different fathers and the same mother, they are partly of the same blood; because they are descended from the same pair, namely, their maternal grandfather and grandmother. Co. Litt. 157; 2 Bl. Comm. (Chit. Ed.) 210, and note. It follows that a father and daughter, are partly of the same blood, for both are descended from the same pair, namely, the parents of the father. It is insisted, however, that in this statute, the words, "of the blood of the person from whom such estate came," include only the descendants of that person. If this question were raised for the first time I do not think I could so construe these words, for it is not their natural meaning, and would give to this clause of the statute a far more restricted operation than I think belongs to it. But in truth it was decided in Gardner v. Collins. In that case, the intestate was Mary C. Gardner. The estate in question came to her from her brothers. Her half brothers claimed and recovered, as being of the blood of their half brothers from whom the estate came to the intestate. Of course they were not descended from those from whom the estate came. I am of opinion that Thomas Sessions was of the blood of his daughter, from whom this estate came.

The next question is, was he "the kin next to the intestate?" The same section of the statute, already referred to, contains, among its canons of descent, the following: "If there be no mother, nor brother, nor sister, nor their descendants, the inheritance shall go, in equal moities, to the paternal and maternal kindred, each in the following course:—First, to the grandfather. If there be no grandfather, then to the grandmother, uncles, and aunts, on the same side, and their descendants, or such of them as there be." Page 238. It is argued that this canon is established solely for the descent of estates not ancestral; and that as this estate is not distributable under it, its provision, placing the grandfather before the uncles and aunts, is of no effect. It is true, this estate is not divisible among both the paternal and maternal kindred, because it came to the intestate by descent from her mother, and so is affected by the other clause of the act above quoted. But it by no means follows, that this last-mentioned clause has the effect to take ancestral estates wholly out of the preceding part of the section, and leave them unregulated by any canon, determining who shall take as the kin next to the intestate. It can hardly be supposed, a priori, that it was the intention of the legislature to determine with precision, in what order estates not ancestral should go to the kin of the intestate, but to make no provision whatever of that kind in the case of ancestral estates. And an examination of this act brings my mind to no such conclusion.

The act begins with the following words: "When any person, having title to any real estate of inheritance, shall die intestate as to such estate, it shall descend and pass in equal portions to his kindred, in the following course." Then follows the canon of descents, including, among others, that which puts the grandfather before the uncles and aunts. Now this part of the section is unlimited in its terms, which describes the estates to be governed by it, and if it were not for the subsequent clause, ancestral estates would go in the course there indicated. But this was not intended. It was the purpose of the legislature to keep such estates in the blood of the ancestor who was the stock of descent. And this, I think, was all the distinction intended to be made between ancestral and other estates. The whole section must be construed together. And, so construed, it amounts to this; if there be no mother, nor brother, nor sister, nor their descendants, the inheritance shall go, first to the grandfather, &c. If the estate be not ancestral, both the paternal and maternal kindred should take in the order set down. If the estate be ancestral, the kindred of the blood of the person from whom the estate came, if any such there be, shall alone take in the same order. This gives to the entire section a consistent interpretation, and allows it to be, what it is presumable the legislature intended it should be, a systematic arrangement of a canon of descent, applicable to all estates, coming either by descent, or purchase, to the intestate.

My opinion is, that Mr. Batley has a valid title under Thomas Sessions, and partition must be decreed accordingly.